285 N.J. Super. 168 (1995)
666 A.2d 619
CARMELO RIVERA, PLAINTIFF,
v.
SAMUEL FORTUNATO, COMMISSIONER OF INSURANCE OF THE STATE OF NEW JERSEY, UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, JOHN DOE AND RICHARD ROE, SAID NAMES BEING FICTITIOUS, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Decided July 12, 1995.
*169 James P. Sieradzki for plaintiff (Goldstein, Ballen, O'Rourke & Wildstein, attorneys).
Dean J. Obeidallah for defendants Samuel Fortunato and the Unsatisfied Claim and Judgment Fund Board (Beattie Padovano, attorneys).
MINIMAN, J.S.C.
Defendants Samuel Fortunato, the New Jersey Commissioner of Insurance (the Commissioner), and the Unsatisfied Claim and *170 Judgment Fund Board (the Board) move for summary judgment under the verbal threshold contained in § 8 of the New Jersey Automobile Reparation Reform Act (the Reparation Reform Act). N.J.S.A. 39:6A-1 to -35. No reported decision has been found which addresses this issue in the context of an action against the Commissioner seeking to recover noneconomic loss in connection with injuries sustained in a hit-and-run accident. For the purpose of this motion only, defendants do not dispute the relevant facts.
Plaintiff Carmelo Rivera (Rivera) was a pedestrian on January 18, 1992, when he was struck by a motor vehicle which left the scene of the accident without being identified. Rivera filed a statement of eligibility with the Board in which he certified to the elements necessary to make a claim against the Unsatisfied Claim and Judgment Fund (the Fund) for injuries sustained in a hit-and-run accident. He also indicated that he sought personal injury protection benefits (PIP benefits) from the Fund.[1] Thereafter, Rivera filed suit against the Commissioner and the Board[2] to recover damages for his noneconomic losses.[3] This court finds that the verbal threshold contained in N.J.S.A. 39:6A-8 does not apply to victims of hit-and-run accidents seeking compensation from the Fund.[4]
The New Jersey Unsatisfied Claim and Judgment Fund *171 Law[5] (the Fund Law) was enacted in 1952 by the same legislature which created the New Jersey Motor Vehicle Security-Responsibility Law.[6] Both statutes have been amended on several occasions over the past 40 years. In construing the Fund Law, we are mindful that:
The purpose of the Fund is to provide a measure of relief to persons who sustain losses or injury inflicted by financially irresponsible or unidentified operators of motor vehicles, where such persons would otherwise be remediless. Corrigan v. Gassert, 27 N.J. 227 [142 A.2d 209] (1958), Dixon v. Gassert, 26 N.J. 1 [138 A.2d 14] (1958). The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the Fund against fraud and abuse and to the fulfillment of the essential legislative policy. Giles v. Gassert, 23 N.J. 22, 34 [127 A.2d 161] (1956). The Fund ... is regarded as a trust fund for the stated purposes and the cost of administration. Wormack v. Howard, 33 N.J. 139, 143 [162 A.2d 846] (1960). The public interest demands that the Fund ... be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom.
[Douglas v. Harris, 35 N.J. 270, 279, 173 A.2d 1 (1961).]
The Fund provides benefits to New Jersey residents and certain others who are injured by persons operating uninsured or unidentified motor vehicles so long as the injured person does not have uninsured motorist benefits available under an applicable automobile liability policy of insurance (qualified persons). N.J.S.A. 39:6-62. Two classes of qualified persons are created by the Fund Law  persons injured by identified uninsured motorists from whom damages cannot be secured and persons injured in hit-and-run accidents. See N.J.S.A. 39:6-69 and N.J.S.A. 39:6-78.
With regard to hit-and-run accidents, the Fund Law provides that any qualified person may bring an action against the Commissioner[7] for personal injury or death when the identity of the *172 motor vehicle and its operator cannot be ascertained.[8]N.J.S.A. 39:6-78. The Fund Law goes on to provide that "no judgment against the Commissioner shall be entered in such an action unless the court is satisfied, upon the hearing of the action," that (a) the plaintiff has given the Board written notice of intention to make a claim within the time allowed by N.J.S.A. 39:6-65, (b) the injuries are not covered by any workers' compensation law, (c) the plaintiff was not the owner of an uninsured motor vehicle at the time of the accident nor operating a motor vehicle in violation of an order of suspension or revocation, (d) the plaintiff has a cause of action against the operator or owner of the hit-and-run vehicle, (e) all reasonable efforts have been made to identify the motor vehicle and its operator, and (f) the action is not brought on behalf of an insurer under the circumstances prohibited by N.J.S.A. 39:6-70(1). N.J.S.A. 39:6-78(a)-(f).
The Commissioner, in seeking summary judgment dismissing the noneconomic claims of Rivera, does not argue that the proofs with respect to any of these six statutory criteria are fatally deficient. Rather, he argues that qualified persons injured in hit-and-run accidents who are eligible for PIP benefits must also demonstrate that the injuries they sustained satisfy the requirements of the verbal threshold established in N.J.S.A. 39:6A-8. To support this argument, the Commissioner relies upon N.J.S.A. 39:6-70(n),[9] which provides as follows:

*173 In order to recover for noneconomic loss, as defined in [N.J.S.A. 39:6A-2] for accidents to which the benefits of [N.J.S.A. 39:6-86.1[10] and 86.4[11]] apply, the injured person shall have sustained an injury described in subsection a. of [N.J.S.A. 39:6A-8].
[N.J.S.A. 39:6-70(n).]
In determining whether the Fund Law requires application of the verbal threshold to qualified persons injured in hit-and-run accidents, the court must view "all of the sections of the statute as standing in pari materia and must consider them together." Douglas v. Harris, supra, 35 N.J. at 281, 173 A.2d 1. The court must also "construe the act in a common sense fashion consonant with the purpose of precluding fraud and abuse and promoting `fulfillment of the essential legislative policy.'" Garcia v. Snedeker, 199 N.J. Super. 254, 261, 489 A.2d 175 (App.Div. 1985). That *174 common sense, however, must remain tethered to the language of the statute itself:
[W]hile liberality of construction of remedial legislation is desirable, we cannot ignore the plain meaning of the language employed by the Legislature for as was said in Dixon v. Gassert, 26 N.J. 1, 9 [138 A.2d 14] (1958) "It is not our function to legislate; it is our duty to interpret. And in doing so we must give effect to the language employed by the legislative body in order to properly effectuate the legislative design."
[Wormack v. Howard, 33 N.J. 139, 142-143, 162 A.2d 846 (1960).]
We begin our analysis of N.J.S.A. 39:6-70(n) with §§ 7-9 of the Fund Law. Section 7 governs defense of actions against known defendants and § 8 requires their cooperation in the defending the action. N.J.S.A. 39:6-67 and -68. Section 9 provides in pertinent part as follows:
Application for payment of judgment
When any qualified person recovers a valid judgment in any court of competent jurisdiction in this State against any other person, who was the operator or owner of a motor vehicle, for injury to, [or] death of, any person or persons ... arising out of the ownership, maintenance or use of [a] motor vehicle in this State on or after April 1, 1955, and any amount remains unpaid thereon ..., such judgment creditor may upon the termination of all proceedings, including reviews and appeals in connection with such judgment, file a verified claim in the court in which the judgment was entered, and upon 10 days' written notice to the board may apply to the court for an order directing payment out of the fund, of the amount unpaid upon such judgment for bodily injury or death....
[N.J.S.A. 39:6-69, emphasis added.]
This section by its plain terms applies only to actions against known tortfeasors.
The subsection upon which the Commissioner relies for application of the verbal threshold is contained in § 10 of the Fund Law, which opens with the statement that "[t]he court shall proceed upon such application, in a summary manner, and, upon the hearing thereof, the applicant shall be required to show" that he meets the criteria set forth in § 10. N.J.S.A. 39:6-70. Common sense and ordinary grammatical construction compel the conclusion that the words "such application" refer to the application for payment of a judgment which is the subject matter of § 9, the immediately preceding section concerning judgments against known, uninsured motorists from whom satisfaction of judgment *175 cannot be obtained. This conclusion is further supported by a comparison of the portions of the Fund Law relating to uninsured motorist claims with those relating to hit-and-run claims.
The uninsured motorist claim portion of the statute provides in § 11 that the court is to make an order for payment of the judgment upon satisfactory proof of the matters required to be shown in § 10. N.J.S.A. 39:6-71. Needless to say, the statute provides a mechanism for ordering payment of settlements as well as default and consent judgments. N.J.S.A. 39:6-72 and -74. It also requires assignment of judgments to the Commissioner. N.J.S.A. 39:6-77. Parallel provisions to these are found in the portion of the statute governing hit-and-run claims.
The Fund Law permits a direct action against the Commissioner by qualified persons injured by hit-and-run drivers. N.J.S.A. 39:6-78. It permits late notice of claim where known suspected tortfeasors are exonerated. N.J.S.A. 39:6-79. The Commissioner may be impleaded when implication of such a tortfeasor appears to be unlikely. N.J.S.A. 39:6-80. Actions against the Commissioner may be settled with court approval. N.J.S.A. 39:6-82. As with uninsured motorist claims, the court must enter an order directing payment of a judgment entered against the Commissioner. N.J.S.A. 39:6-84. Thus, uninsured motorist claims and hit-and-run claims are treated separately and fully in the Fund Law. Common sense and the plain language of all of the material provisions in the Fund Law compel the conclusion that § 10(n) of the Fund Law relates only to judgments secured against known, uninsured motorists.
The foregoing conclusion is further buttressed by comparing (a) the fourteen criteria found in § 10 of the Fund Law for payment of a judgment against an uninsured motorist with (b) the six criteria in § 18 of the Fund Law for bringing an action against the Commissioner for personal injury sustained in a hit-and-run accident and the provisions of § 24 governing payment of any judgment rendered against the Commissioner.
*176 Three of the requirements of § 10 of the Fund Law are restated in § 18: Both require compliance with the notice provisions of the act. Compare N.J.S.A. 39:6-70(e) with -78(a). Both preclude claims covered by workers' compensation. Compare N.J.S.A. 39:6-70(a) with -78(b). Both bar recovery of claims by owners and registrants of uninsured vehicles and persons operating a vehicle in violation of an order of suspension or revocation. Compare N.J.S.A. 39:6-70(d) with 39:6-78(c).
Two of the requirements of § 10 of the Fund Law are incorporated by reference in §§ 18 and 24: Subsection (f) of § 18 incorporates by reference subsection (1) of § 10 respecting claims on behalf of insurers. N.J.S.A. 39:6-78(f). In addition, § 24 of the Fund Law incorporates by reference subparagraph (m) of § 10 to require reduction of a judgment against the Commissioner by any amounts recovered from third parties. N.J.S.A. 39:6-84.
Eight of the requirements of § 10 are sui generis to uninsured motorist claims. N.J.S.A. 39:6-70(b), -(c), and -(f) through -(k). Two of the requirements of § 18 are sui generis to hit-and-run claims. N.J.S.A. 39:6-78(d) and -(e).
This brings us to N.J.S.A. 39:6-70(n), which incorporates the verbal threshold into the findings which must be made by the court prior to entry of an order compelling the Board to pay a judgment against a known, uninsured motorist. This is the only subsection of § 10 of the Fund Law which does not on its face appear to be sui generis to uninsured motorist claims but which is neither restated nor incorporated by reference in §§ 18 through 25 governing hit-and-run claims. Compare N.J.S.A. 39:6-70(m) and N.J.S.A. 39:6-78 through -85.
The Commissioner argues that, despite the plain language of the above-described provisions of the Fund Law, application of the verbal threshold to hit-and-run claims should be implied from the mere fact that N.J.S.A. 39:6-70(n) makes reference to N.J.S.A. 39:6-86.4, the provision extending PIP benefits to qualified persons injured in hit-and-run accidents. He argues that this cross-reference must of necessity limit the right of such injured persons *177 to recover for noneconomic loss even though subsection (n) is neither restated nor incorporated by reference in N.J.S.A. 39:6-78. The Commissioner cites Giles v. Gassert, 23 N.J. 22, 35, 127 A.2d 161 (1956) for the proposition that clearly implied terms are as much a part of the Fund Law as those which are expressed. He urges that because courts are bound to preserve the assets of the Fund, this implied requirement should be imposed, particularly so because he cannot exercise his right of subrogation against unknown tortfeasors. Finally, the Commissioner argues that creating greater benefits for qualified persons injured in hit-and-run accidents than are made available to such persons injured in uninsured motorist accidents will increase the risk of fraudulent claims against the Fund since qualified persons injured in hit-and-run accidents will avoid attempting to identify the unknown driver in order to avoid the potential bar of the verbal threshold.
It is true that courts are bound to preserve the assets of the Fund from fraudulent and abusive claims. Giles v. Gassert, supra, 23 N.J. at 34, 127 A.2d 161. The Fund is a trust fund for the purpose of providing a measure of relief to persons injured "by financially irresponsible or unidentified operators of motor vehicles." Douglas v. Harris, supra, 35 N.J. at 279, 173 A.2d 1 (citing Corrigan v. Gassert, 27 N.J. 227, 142 A.2d 209 (1958)). It is to be administered in a fashion to assure that persons entitled to benefits receive them. Id. However, it is not the obligation of courts to preserve the Fund's assets at the expense of qualified persons whom the Legislature intended to benefit. Thus, the Commissioner's argument for preservation of Fund assets begs the question, "Does the Fund Law clearly imply a requirement that claimants surmount the verbal threshold in order to be qualified to receive Fund benefits for injuries sustained in hit-and-run accidents?"
In answering this question, it is important to remember that the plain meaning of the language used by the Legislature cannot be ignored, for it is the duty of courts to interpret, not legislate. Wormack v. Howard, supra, 33 N.J. at 143, 162 A.2d *178 846. A term in a statute cannot be "clearly implied" when it flies in the face of the language actually used by the Legislature. Here, the plain meaning of § 10 of the Fund Law precludes a conclusion that the term which the Commissioner seeks to have imposed is "clearly implied." This is so, since § 10, as discussed above, relates exclusively to judgments secured against known, uninsured motorists. The legislative history, too, does not support an implied requirement that qualified persons injured in hit-and-run accidents must surmount the verbal threshold.
When the Fund Law was first enacted in 1952, it contained a $200 monetary threshold on recovery of judgments against the Commissioner in hit-and-run cases. L. 1952, c. 174, § 18. This threshold did not apply to payment of judgments secured against uninsured motorists from whom satisfaction of judgment could not be obtained. Id. at §§ 9-10. The Legislature amended N.J.S.A. 39:6-78 in 1958 to eliminate the originally enacted monetary threshold. L. 1958, c. 99, § 6. This 1958 amendment, of course, brought qualified persons injured in hit-and-run accidents into parity with victims of all other motor vehicle accidents  there was no limit on their right to recover noneconomic loss.
Subsection (n) was added to N.J.S.A. 39:6-70 by the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 ("the Cost Containment Act"). L. 1983, c. 362, § 2, eff. Oct. 4, 1983. This amendment to the Fund Law incorporated the $200 monetary threshold of the Reparation Reform Act into the conditions precedent for entry of an order requiring the Fund to pay a judgment secured against an uninsured motorist. N.J.S.A. 39:6A-8a. The Reparation Reform Act created an exemption from tort liability to persons eligible for PIP benefits who sustained noneconomic loss as a result of soft tissue injuries which required less than $200 in medical treatment. Id. That exemption, however, was available only to tortfeasors who proved that they had actually obtained the PIP coverage mandated by N.J.S.A. 39:6A-4; otherwise the exemption was inapplicable. Fennell v. Ferreira, 133 N.J. Super. 63, 70, 335 A.2d 84 (Law *179 Div. 1975). As a result, when the Cost Containment Act was passed, qualified persons injured by known, uninsured motorists could recover a judgment against the tortfeasor without regard to the amount of their medical expenses, because the tortfeasor had failed to procure PIP coverage and could not claim the exemption. That right to a judgment for soft tissue noneconomic loss irrespective of medical expenses was not limited by the Cost Containment Act. That Act limited only the injured person's right to have the judgment paid out of the Fund if the medical expenses were less than $200.
When the monetary thresholds of the Reparation Reform Act were changed in 1988 to a verbal threshold and no threshold, the basic premise of Fennell did not change. L. 1988, c. 119, § 6, eff. Jan. 1, 1989. Uninsured motorists to this day cannot claim any exemption from tort liability for noneconomic loss, irrespective of the tort threshold applicable to a person injured by their negligence. N.J.S.A. 39:6A-8, Fennell v. Ferreira, supra, 133 N.J. Super. at 70, 335 A.2d 84. Thus, qualified persons injured by known, uninsured motorists have no lawsuit threshold vis-a-vis the tortfeasor but can only obtain satisfaction of a judgment from the Fund if the injuries they sustained satisfy the verbal threshold. N.J.S.A. 39:6-70(n). If the injuries do not pass the verbal threshold, the person injured in an uninsured motorist accident is free to attempt to collect a judgment for minor, mild or slight injuries directly from the uninsured motorist through wage executions and executions on after-acquired property.
Until a hit-and-run driver and automobile are identified, one does not know whether they are entitled to claim an exemption from tort liability for noneconomic loss, since their insured status cannot be ascertained.[12] However, that inquiry is irrelevant because, even if they were insured, qualified persons under the Fund Law by definition neither own automobiles nor are immediate *180 family members under automobile insurance policies and thus have no lawsuit threshold pursuant to the fourth paragraph of N.J.S.A. 39:6A-8.
The Legislature certainly was cognizant of the hit-and-run provisions of the Fund Law when it passed the Cost Containment Act, because that Act made minor amendments to N.J.S.A. 39:6-78.[13] The Cost Containment Act also amended N.J.S.A. 17:28-1.1a to make uninsured and hit-and-run motorist coverage subject to whichever threshold of N.J.S.A. 39:6A-8 was selected by the named insured. L. 1983, c. 362, § 1. As a result, today persons with no lawsuit threshold in actions against known, insured tortfeasors have no lawsuit threshold applicable to claims against their own insurance carriers for injuries sustained in hit-and-run accidents.
If the Legislature wished to place a qualified person on a par with an individual who selects a verbal threshold in exchange for lower insurance premiums rather than keeping such a person in parity with:
(a) an insured person who selects no lawsuit threshold and who can recover noneconomic loss whether the tortfeasor is insured or not,
(b) an uninsured person to whom N.J.S.A. 39:6A-8 allocates no lawsuit threshold and who can recover noneconomic loss from an insured tortfeasor, and
(c) a qualified person, who by definition is uninsured, to whom N.J.S.A. 39:6A-8 allocates no lawsuit threshold, and who thus can recover noneconomic loss directly from the tortfeasor, albeit not from the Fund,
it would have done so expressly.[14] Certainly, when the Legislature wanted to incorporate provisions of § 10 into § 18, it did so *181 clearly and unequivocally. See N.J.S.A. 39:6-78(f) and -84. It is the duty of courts to interpret, not legislate. Wormack v. Howard, supra, 33 N.J. at 143, 162 A.2d 846. The Legislature's choice of no lawsuit threshold for qualified persons injured in hit-and-run accidents cannot be overruled.
One might well ask, as the Commissioner does here, why the Legislature referred to N.J.S.A. 39:6-86.4 when it formulated the language found in N.J.S.A. 39:6-70(n). A clear possibility is that the Legislature anticipated that a victim of a hit-and-run accident might collect PIP benefits from the Fund under N.J.S.A. 39:6-86.4 and later discover the identity of the hit-and-run vehicle and driver, secure a judgment against them and seek payment of the judgment under N.J.S.A. 39:6-69 and -70 on the ground that the now-known driver was uninsured and the judgment uncollectible. This entirely plausible explanation of the reference in § 10(n) to PIP benefits for qualified persons injured in hit-and-run accidents, like the plain language of the Fund Law, militates against the Commissioner's argument that application of the verbal threshold to such qualified persons is clearly implied from the terms of the Fund Law. Furthermore, this explanation does no violence to the statutory language of the Fund Law, while the Commissioner's interpretation requires that we ignore some of its material provisions.
The Commissioner argues that he cannot exercise his right of subrogation against unknown tortfeasors. N.J.S.A. 39:6-85. The difficulties in exercising that right are present whether the victim of the hit-and-run accident suffers a serious injury or one that is *182 minor, mild or slight. Therefore, the Commissioner's practical difficulty in exercising his right of subrogation has no relevance to the issue of whether the verbal threshold should be applied to qualified persons injured in hit-and-run accidents.
The Commissioner's fear that the absence of a verbal threshold for hit-and-run accidents will increase the risk of fraudulent claims is not grounded in reality. Litigants do not prefer to make claims against the Fund so long as there is any possibility of an insured driver. If they were truly involved in a hit-and-run accident, they will endeavor to identify the motor vehicle in the hope of finding an insured driver as to whom they would have a zero threshold. It hardly seems likely that such a person would forego the chance of locating an insured driver out of fear that the driver may be both uninsured and without assets. The Board itself can investigate the accident because the injured person will have given notice to the Board pursuant to N.J.S.A. 39:6-65 within ninety days of the accident. Presumably, the police, too, will attempt to identify the hit-and-run driver. Furthermore, the Fund Law itself provides protection from the very behavior that the Commissioner fears. See N.J.S.A. 39:6-78(e). Imposing a verbal threshold to reduce the risk of fraud may well be a draconian measure in light of meritorious claims. In any event, this rationale for a verbal threshold is better left to the Legislature which can study relevant data respecting hit-and-run claims, data not before the court, and make an appropriate policy decision in light of competing interests.
For the foregoing reasons, the court concludes that defendants are not entitled to compel the plaintiff to show that his injuries surmount the verbal threshold of N.J.S.A. 39:6A-8.
NOTES
[1] These benefits are available by virtue of N.J.S.A. 39:6-86.4.
[2] Because the Unsatisfied Claim and Judgment Fund Law only provides for an action against the Commissioner, N.J.S.A. 39:6-78, references to the defendants will be confined to the Commissioner except where a specific reference to the Board is required.
[3] The complaint does not specifically demand PIP benefits with respect to $18,000 in medical bills Rivera has incurred.
[4] Rivera at the time of the accident was not a person who owned an automobile nor was he an immediate family member under an automobile insurance policy. As a result, Rivera would not have been subject to the verbal threshold if the person who struck him was an insured, known driver. N.J.S.A. 39:6A-8.
[5] N.J.S.A. 39:6-60 to -91.
[6] N.J.S.A. 39:6-23 to -57.
[7] As originally enacted, N.J.S.A. 39:6-78 required qualified persons to apply for leave to bring an action against the Fund. Permission to do so was predicated upon the applicant demonstrating that six statutory criteria were satisfied. L. 1952, c. 174, § 18, eff. Apr. 1, 1953. It was amended by L. 1956, c. 150, § 1, to permit the filing of such an action without leave, requiring instead that the six statutory predicates be satisfied prior to entry of judgment. The only changes made to the six statutory criteria between their original enactment and the amendments in 1983 were the substitution of the word "claimant" for "applicant" and the substitution in subsection (f) of the word "action" for "application." Id.
[8] Although not relevant here, the Fund Law also permits such an action to be brought if it is established that the motor vehicle at the time of the accident was in the possession of some person other than the owner without the owner's consent and the identity of the operator cannot be ascertained. N.J.S.A. 39:6-78.
[9] The Fund also recently cited N.J.S.A. 17:28-1.1e(2)(c) in a similar case pending before this court. The Fund did not explain its asserted relevance, relying on a bare citation to that statute found in an unpublished decision of the Appellate Division. The court is mindful of R. 1:36-3 which provides that unpublished opinions are not precedential or binding. No relevance can be divined and the statutory citation in the Appellate Division decision may be an error. This statute deals with motor vehicle liability policies issued in New Jersey. N.J.S.A. 17:28-1.1a. It requires all such policies to provide "uninsured motorist" coverage of at least $15,000/$30,000 with respect to damages the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle or a "hit-and-run motor vehicle" as the latter term is defined by N.J.S.A. 39:6-78. Id. It also provides that if the accident is one to which personal injury protection benefits apply, the tort option (zero or verbal) elected by the insured pursuant to N.J.S.A. 39:6A-8 will govern the insured's right to recover noneconomic loss. Id. N.J.S.A. 17:28-1.1e(2)(c) merely defines the term "hit-and-run motor vehicle" anew by again incorporating the definition which is set forth in N.J.S.A. 39:6-78.
[10] N.J.S.A. 39:6-86.1 provides that the Fund will pay medical expense, income continuation, essential services, death and funeral expense benefits to qualified persons injured by uninsured motor vehicles.
[11] N.J.S.A. 39:6-86.4 provides that a victim of a hit-and-run accident who satisfies the requirements of subsections (b), (c), (e) and (f) of N.J.S.A. 39:6-78 and also demonstrates that at the time of the accident he was not "operating or riding in a motor vehicle which he had stolen or participated in stealing, or ... [o]perating a motor vehicle without the permission of the owner" is also eligible to receive the benefits provided by N.J.S.A. 39:6-86.1.
[12] Of course, this statutory provision would be inapplicable if the tortfeasors were uninsured. Id.; Fennell v. Ferreira, 133 N.J. Super. at 70, 335 A.2d 84.
[13] The word "workers'" was substituted for "workmen's" in subsection (b) and the phrase "the owner or registrant of an uninsured motor vehicle or" replaced "operating or riding ... child, and" in subsection (c).
[14] Because Rivera would have the benefit of no threshold irrespective of the insured or uninsured status of the hit-and-run vehicle and its operator, this case is distinguishable on its facts from Garcia v. Snedeker, 199 N.J. Super. 254, 260-61, 489 A.2d 175 (App.Div. 1985). There, the plaintiff urged a construction of the statute which would have eliminated any statute of limitations upon claims for PIP benefits from the Fund. The Appellate Division rejected that argument, because all qualified persons who were injured in uninsured-motorist accidents would have been in a better position than all insured victims of uninsured-motorist accidents. Here, Rivera occupies the same position as an insured driver electing no lawsuit threshold who is injured by a hit-and-run driver. He is also in parity with uninsured persons who are injured by known, insured motorists. Concededly, he is in a better position than insured victims of hit-and-run accidents who elected the verbal threshold, but he did not receive the consideration exchanged for that threshold  lower insurance premiums. Thus, the rationale of Garcia has no relevance here.